**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: |
| | ) | |
| i3 VERTICALS, LLC AKA CHARGE PAYMENT, LLC, | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the Plaintiff, STARR INDEMNITY & LIABILITY COMPANY, by and through its attorneys, and for its Complaint for Declaratory Judgment against Defendant, i3 VERTICALS, LLC AKA CHARGE PAYMENT, LLC, states the following:

### THE PARTIES

1.      STARR INDEMNITY & LIABILITY COMPANY (hereinafter "Starr") is a Texas corporation with its principal place of business located in New York, New York.

2.      At all times relevant, Starr was authorized to do business in the State of Tennessee.

3.      i3 VERTICALS, LLC AKA CHARGE PAYMENT, LLC (hereinafter "i3 Verticals") is a Delaware limited liability company with its principal place of business located in Nashville, Tennessee.

4.      Upon information and belief, the members of i3 Verticals are not residents of Texas or New York. However, the identities of the limited liability company's members are not

1

public information nor known to Starr. As a result, Starr is unable to plead with certainty at this time the identities or residency of the limited liability company's members.[1]

**JURISDICTION AND VENUE**

5.     This Court has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332 because this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Defendant resides in this District, and because a substantial part of the events or omissions giving rise to this claim occurred in this District.

**SUMMARY OF ACTION**

7.     This action arises out of a controversy between the parties regarding a Resolute Portfolio for Private Companies Policy issued by Starr to i3 Verticals (later defined as the "Policy"). Starr brings the instant action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 to declare its rights and obligations pursuant to the Policy as it relates to the demand for insurance coverage by i3 Verticals in response to a putative class action lawsuit filed by Expert Auto Repair, Inc. and Jeff Straight against i3 Verticals and others in the Superior Court of California, Los Angeles County (the "Underlying Lawsuit").

8.     There exists an actual controversy between the parties that requires a declaration by this Court of the rights and obligations under the Policy.

9.     Specifically, Starr asks the Court to declare that there is no coverage under the Policy for i3 Verticals in response to the Underlying Lawsuit and that Starr has no duty to defend

---

[1] Unless otherwise directed by the Court, once an appearance has been filed on behalf of i3 Verticals, Starr will request leave to issue limited discovery related to jurisdiction.

Case 3:16-cv-02832   Document 1   Filed 11/03/16   Page 2 of 22 PageID #: 2

or indemnify i3 Verticals in the Underlying Lawsuit because coverage is excluded by the Policy provisions and/or the Underlying Lawsuit does not trigger coverage in the first instance as it does not allege "Loss" as defined by the Policy. In addition, Starr seeks a judicial declaration that, pursuant to the Policy, i3 Verticals shall repay Starr any amounts that Starr paid to defend i3 Verticals in response to the Underlying Lawsuit.

10.     Upon information and belief, Expert Auto Repair, Inc. ("Expert") is a Michigan corporation with its principal place of business in Romulus, Michigan. Jeff Straight ("Straight") is an individual that, upon information and belief, resides in Michigan and intends to remain a resident of Michigan. Thus, Expert and Straight (collectively, the "Underlying Claimants") are citizens of the state of Michigan. The Underlying Claimants have not been joined as defendants in this action because Starr believes that they have done nothing that would subject them to the jurisdiction of a Tennessee court, and that this Court does not have personal jurisdiction over them. Starr will provide notice of this suit to the Underlying Claimants by mailing a copy of this Complaint to their attorney in the Underlying Lawsuit and advising them of their right to petition this Court for leave to intervene in this action, should they choose to do so.

## FACTUAL BACKGROUND

### A.     The Policy

11.     Starr issued a Resolute Portfolio for Private Companies insurance policy to i3 Verticals, Policy Number SISIFNL20169515, for the policy period of October 31, 2015 to October 31, 2016 (the "Policy"). A true and correct copy of the Policy is attached hereto as **Exhibit A**.

12. The Directors & Officers Liability Coverage Section of the Policy is subject to $5 million Limit of Liability and an Aggregate Policy Limit of Liability of $11 million, over and above a $50,000 retention.

13. Insuring Agreement C. of the Directors & Officers Liability Coverage Section (the "D&O Coverage Section") states that, subject to the General Terms & Conditions Section and the D&O Coverage Section:

> C. The **Insurer** shall pay on behalf of the **Company** the **Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against the **Company** for any **Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy.

14. The "Exclusions" portion of the D&O Coverage Section, as amended by Endorsement No. 15, states in applicable part:

> This policy shall not cover any **Loss** in connection with any **Claim**:
>
> (a) arising out of, based upon or attributable to the gaining of any personal profit or advantage or improper or illegal remuneration if a final judgment or adjudication in an underlying action establishes that such **Insured** was not legally entitled to such personal profit or advantage or that such remuneration was improper or illegal;
>
> (b) arising out of, based upon or attributable to any deliberate fraudulent act or any willful violation of law by an **Insured** if a final judgment or adjudication in an underlying action establishes that such act or violation occurred;
>
>     *  *  *
>
> (e) based upon, arising from, or in consequence of any actual or alleged liability of any **Insured** under any express contract or agreement, except to the extent that such **Insured** would have been liable in the absence of such contract or agreement; provided, however, that this exclusion shall apply only to any **Claim** under Insuring Agreement C.;
>
>     *  *  *

(o) alleging, arising out of, based upon, or attributable to any actual or alleged: … (ii) payments, commissions, gratuities, benefits or other favors for the direct or indirect benefit of any officials, directors, agents, partners, representatives, principal shareholders, or owners of the **Company** …;

\* \* \*

(s) alleging, arising out of, based upon or attributable to the rendering or failure to render any professional service to a customer or client of the **Insured**; …

15. Among others, the Policy defines the following terms as follows:

**"Claim"** means any: …

    (2) judicial, administrative or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief commenced against an **Insured**, including any appeal therefrom, which is commenced by:

        (i) service of a complaint or similar pleading; …

\* \* \*

**"Company"** means:

(1)    The **Parent Company**; …

\* \* \*

**"Insured"** means the **Company** and any **Insured Person**.

\* \* \*

**"Loss"** means:

    (1) damages, settlements or judgments;

    (2) pre-judgment or post-judgment interest;

    (3) costs or fees awarded in favor of the claimant;

    (4) punitive, exemplary or the multiplied portion of any multiple damages awards, but only to the extent that such damages are insurable under the applicable law most favorable to the insurability of such damages;

    (5) …; and

    (6) **Defense Costs**.

5

**"Loss"** does not include: …

    (v)  matters which may be deemed uninsurable under applicable law;
        …

*    *    *

**"Parent Company"** means the entity named in Item 1 of the Declarations.

*    *    *

**"Wrongful Act(s)"** means: …

    (3)  with respect to the **Company**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by the **Company**.

16.    Provision 6. of the General Terms and Conditions Section, entitled "Defense of Claim and Settlement," provides in relevant part:

> The **Insurer** has the right and duty to defend any **Claim** against any **Insured** covered under this policy, even if such **Claim** is false, fraudulent or groundless; …

> The **Insurer** shall pay **Defense Costs** prior to the final disposition of any **Claim**, excess of the applicable retention and subject to all other terms and conditions of this policy. In the event and to the extent that the **Insureds** shall not be entitled to payment of such **Loss** under the terms and conditions of this policy, such payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally according to their respective interests.

**B.  The Underlying Lawsuit**

17.    On or about June 14, 2016, the Underlying Claimants initiated the Underlying Lawsuit when they filed, on behalf of themselves and those similarly situation, a "Class Action Complaint" against i3 Verticals and other defendants in the Superior Court of California, Los Angeles County, Case No. BC623856.  A true and correct copy of the Complaint in the Underlying Lawsuit is attached hereto as **Exhibit B**.

6

18.     In general, the Underlying Lawsuit alleges that i3 Verticals and the other defendants engaged in "unlawful, unfair and fraudulent business conduct in connection with the provision of services related to merchant payments via credit and debit cards ('merchant services')" pursuant to certain contractual relationships between the Underlying Claimants and other similarly situated merchants, on the one hand, and defendants, on the other. The Underlying Lawsuit "challenges Defendants' unlawful, unfair, and fraudulent business practices."

19.     The Underlying Complaint alleges that Expert is a merchant that owns and operates a small automotive paint and body shop in Michigan, and Straight is the principal owner of Expert. For merchants – like the Underlying Claimants – to accept payment for goods and services via credit and debit cards, they must utilize "merchant services," which are provided through a system involving multiple parties, one of which is the Independent Sales Organization ("ISO") that "enrolls merchants in payment processing services, ensures that the services are working properly, provides customer support, and handles monthly billing and collections."

20.     The Underlying Complaint alleges that defendant Merchant Processing Solutions, LLC d/b/a Payment Systems Corp. ("Payment Systems") is an ISO that specializes in enrolling small and medium-sized merchants in merchant services. It essentially brokers deals between merchants and the payment processing companies and equipment leasing companies in exchange for a percentage of the processing fees and lease payments that are charged to merchants. Payment Systems offers to provide the following merchant services to merchants: (a) payment processing services, (b) payment processing equipment leasing, and (c) related services, such as customer service and monthly billing and collections of payment processing charges.

21.    The Underlying Claimants allege that Payment Systems and its affiliated companies, including i3 Verticals, perpetrate and profit from a scheme to defraud merchants. Payment Systems targets small "mom and pop" merchants with false promises of savings by reducing costs for merchant services if they switch providers and "induce 'mom and pop' merchants to purchase merchant services via every type of artifice and deception in the book, including but not limited to (a) failing to disclose fees they know the merchant will be charged; (b) affirmatively misrepresenting to merchants they will not be charged fees they know will be charged; (c) informing merchants that by signing they are only agreeing to 'apply' for services when in fact their signatures bind them to long-term, non-cancellable deals; (d) promising agreed-upon pricing information will be written on the contract documents after the merchant signs and then later including much higher pricing information; (e) forging merchant signatures and initials on contract documents; (f) burying unconscionable provisions that are never discussed with customers in the middle of fine print contract documents; and (g) attempting to ensure that the merchant does not read the contract document before signing."

22.    The Underlying Complaint further alleges that a sales representative from Payment Systems promised Straight that he and Expert could save a substantial amount of money and would be provided free new credit card machines if they switched from their current merchant services provider to Payment Systems.  Interested, Straight signed and returned certain documents that Payment Systems represented to be his application for approval.  He was told such application documents were not a contract for services; rather, a formal contract would be presented later, after approval.  Days later, he received the new credit card machines, and, assuming he had been approved, began using the machines to process payments.

23.     Pursuant to the Complaint, months later, Straight learned that, contrary to Payment Systems' representations, the application documents were not in fact an application, but were instead the payment processing contract. The Underlying Claimants allege that, by signing the application documents, they unwittingly bound themselves to the terms listed on the application as well as 41 additional pages of terms and conditions they were not provided.

24.     The Underlying Claimants also discovered that they were being charged a monthly fee of $229.13 to lease the two credit card machines that were promised for free. After he investigated the charges, the third-party leasing company advised him that he agreed to a lease agreement on the equipment. Unaware of any lease agreement, Straight obtained a copy of the agreement, which he had not seen before, and discovered that his signature was forged on the agreement. The leasing company has since refused to cancel or forgive the lease, and is currently attempting to collect more than $10,000 on the lease from the Underlying Claimants.

25.     The Underlying Claimants also allege that they discovered that they were being charged an additional $20 per month for a "membership fee" by defendant Carepoint Managed Services, LLC ("Carepoint"), a company that provides membership services to Payment Systems' merchant clients. Both Carepoint and Payment Systems are owned by the same company – defendant The Financial Systems Company, LLC ("FSC"). Again unknown to Straight, he purportedly agreed to the Carepoint membership fee when he signed up for the merchant services with Payment Systems. However, the contract that he was later provided containing the terms of Carepoint membership he again never saw and contained his forged signature.

26. The Underlying Claimants allege that they did not know the Carepoint Membership existed, and that it is a completely useless service that "Payment Systems sneaks into its merchant services in order [to] line the pockets of its owners."

27. As a result, the Underlying Claimants allege that Payment Systems entered into a contract with them by failing to disclose and misrepresenting the fees and key terms of the purported agreement, forging Straight's signature on contract documents, burying unconscionable terms in fine print contracts, and charging for a service they did not receive.

28. The Underlying Claimants also allege that similar contractual arrangements were entered into under similarly fraudulent circumstances, and seek to represent a class consisting of all United States persons or entities that were charged unauthorized amounts for merchant services as a result of improper practices of Payment Systems.

29. The Complaint alleges that i3 Verticals is liable for Payment Systems' unlawful, unfair, and fraudulent activities as the successor-in-interest to Payment Systems. The Underlying Complaint further alleges that Payment Services was the agent or joint venturer of i3 Verticals "and was acting within the course and scope of that relationship." The Underlying Complaint asserts claims against the Defendants "both in their own right as on the basis of *respondeat superior*," and alleges that "each and every one of the acts and omissions alleged herein were performed by, and/or attributable to, all Defendants, each acting as agents and/or employees, and/or under the direction and control of each of the other Defendants, and that said acts and failures to act were within the course and scope of said agency, employment and/or directions and control."

30. The Underlying Lawsuit asserts five causes of action. The First Cause of Action asserts a claim for improper business practices under the California Business and Professions

Code, §17200, *et seq.* This claim alleges that defendants' business practices are unlawful, unfair, and fraudulent by virtue of defendants' breaches of its contracts with merchants, their violation of the covenant of good faith and fair dealing, their enforcement of unconscionable contracts, and their unjust enrichment, because they exposed merchants to fees and charges they were unaware of and never agreed to pay, and because defendants failed to disclose and/or accurately misrepresent the true nature of the merchant services and the ramifications merchants will face if they agree to accept such merchant services. This claim seeks an order enjoining future conduct and restitutionary disgorgement of defendants' ill-gotten gains and to restore to any Class member any money paid for illicit fees and charges.

31.    The Second Cause of Action purports to assert a claim for breach of contract. It alleges that the Underlying Claimants and defendants contracted for merchant services, that defendants breached such contracts by charging merchants for Carepoint membership services that were not provided, and that defendants are liable for the losses of the Underlying Claimants and the Class that resulted from defendants' breaches of the parties' contractual agreements.

32.    The Third Cause of Action purports to assert a claim for breach of the covenant of good faith and fair dealing implied in the contract because of defendants' practices, including but not limited to charging merchants monthly fees for Carepoint membership services that were never provided.

33.    The Fourth Cause of Action purports to assert a claim for unconscionability based upon the adhesive, unfair, and draconian terms defendants imposed in their merchant agreements, including but not limited to requiring merchants to pay monthly fees for worthless Carepoint memberships, and asserts that merchant contracts are unconscionable, contracts of adhesion, deceptive, unfair, illusory, and misleading, and unenforceable as a matter of law.

34.     The Fifth Cause of Action purports to assert a claim for unjust enrichment.  In the event that the merchant contracts are unenforceable or inapplicable, the Underlying Claimants assert that defendants were unjustly enriched by grossly and inequitably overcharging for Carepoint membership services, and the Underlying Claimants and other Class members were unjustly deprived of money obtained by defendants as a result of their unlawful, unfair, fraudulent, unscrupulous, and unconscionable practices.  The Underlying Claimants and the Class seek restitution from the defendants as well as disgorgement of all profits, benefits, and other compensation obtained by defendants by virtue of their wrongful conduct.

**C.     The Claim**

35.     The Underlying Lawsuit was served upon i3 Verticals on or about June 17, 2016.

36.     On or about August 23, 2016, i3 Verticals, through its broker, first notified Starr of the Underlying Lawsuit, and requested coverage for the Underlying Lawsuit pursuant to the terms and conditions of the Policy.

37.     After a reasonable investigation, Starr concluded that there was no coverage available for the Underlying Lawsuit pursuant to the terms and conditions of the Policy, but nevertheless agreed to provide i3 Verticals a defense to the Underlying Lawsuit pursuant to a full and complete reservation of rights, including the right to seek recoupment of all fees and costs incurred to defend i3 Verticals in the event a Court determines that there is no coverage under the Policy.

38.     i3 Verticals disagrees with Starr's coverage determination, and asserts that coverage is available under the Policy for the Underlying Lawsuit.

## COUNT I

### Declaratory Judgment That There Is No Coverage Pursuant to Exclusion(s).

39.     Starr repeats and realleges paragraphs 1 through 38 of this Complaint for Declaratory Judgment as if fully set forth herein.

40.     Under Insuring Agreement C. of the D&O Coverage Section, Starr agreed to pay on behalf of i3 Verticals "Loss arising from a Claim…", subject to the other terms and conditions of the Policy.

41.     The Underlying Lawsuit is a "Claim," as that term is defined by the Policy, as it is a judicial proceeding for monetary, non-monetary and injunctive relief commenced against an Insured, commenced by the service of a Complaint or similar pleading.

42.     i3 Verticals is an "Insured" under the Policy.  "Insured" is defined as the "Company," which in turn includes the "Parent Company," which in turn is defined as the entity named in Item 1 of the Declarations.  i3 Verticals is the entity named in Item 1 of the Declarations of the Policy.

43.     However, under Exclusion (s), the Policy "shall not cover any Loss in connection with any Claim … alleging, arising out of, based upon or attributable to the rendering or failure to render any professional service to a customer or client of the Insured…"

44.     The Underlying Lawsuit is a Claim alleging, arising out of, based upon or attributable to the rendering or failure to render any professional service to a customer or client of the Insured.  Specifically, as set forth above and in the Underlying Complaint, the Underlying Lawsuit alleges that Payment Systems represented and promised, on behalf of itself and i3 Verticals, that it would provide certain specialized merchant services for the Underlying Claimants, that Carepoint charged a membership fee for such professional services on behalf of

13

itself and i3 Verticals, that Payment Services and/or Carepoint failed to provide such professional services, and seeks damages based on the charging of such services and/or failure to provide such services.

45. Furthermore, the Underlying Lawsuit alleges a contractual relationship between the Underlying Claimants and all defendants, including i3 Verticals, whereby the Underlying Claimants were a customer or client of Payment Systems, i3 Verticals, and others, and that Payment Systems promised to provide certain services on behalf of itself, i3 Verticals and others. Because i3 Verticals is alleged to be the successor to Payment Systems, the Underlying Claimants are similarly customers or clients of i3 Verticals.

46. Not only do the Underlying Claimants allege that i3 Verticals is the successor to Payment Systems, they specifically allege that Payment Services was the agent of, or a joint venturer with, i3 Verticals, and that Payment Services "was acting within the course and scope of that relationship." The Underlying Complaint alleges that each and every one of the acts and omissions alleged therein were performed by, and/or attributable to, all defendants, each acting as agents and/or employees, and/or under the direction and control of each other, and that said acts and failures to act were within the course and scope of said agency, employment and/or directions and control. Thus, the Underlying Complaint alleges that the Underlying Claimants were customers or clients of all the underlying defendants, including i3 Verticals.

47. Therefore, any coverage under the Policy for the Underlying Lawsuit is excluded by virtue of Exclusion (s), and Starr owes no duty to defend or indemnify i3 Verticals in response to the Underlying Lawsuit.

## COUNT II

### Declaratory Judgment That There Is No Coverage Pursuant to Exclusion (o)

48.     Starr repeats and realleges paragraphs 1 through 47 of this Complaint for Declaratory Judgment as if fully set forth herein.

49.     Under Insuring Agreement C. of the D&O Coverage Section, Starr agreed to pay on behalf of i3 Verticals "Loss arising from a Claim…", subject to the other terms and conditions of the Policy.

50.     The Underlying Lawsuit is a "Claim," as that term is defined by the Policy, as it is a judicial proceeding for monetary, non-monetary and injunctive relief commenced against an Insured, commenced by the service of a Complaint or similar pleading.

51.     i3 Verticals is an "Insured" under the Policy.   "Insured" is defined as the "Company," which in turn includes the "Parent Company," which in turn is defined as the entity named in Item 1 of the Declarations.   i3 Verticals is the entity named in Item 1 of the Declarations of the Policy.

52.     However, under Exclusion (o), the Policy "shall not cover any Loss in connection with any Claim … alleging, arising out of, based upon or attributable to any actual or alleged … payments, commissions, gratuities, benefits or other favors for the direct or indirect benefit of any officials, directors, agents, partners, representatives, principal shareholders, or owners of the Company …"

53.     The Underlying Lawsuit is a Claim alleging, arising out of, based upon or attributable to payments for the direct or indirect benefit of the owners of i3 Verticals. Specifically, as set forth above and in the Underlying Complaint, the Underlying Lawsuit alleges that the defendants charged the Underlying Claimants and the Class a monthly membership fee.

The Underlying Claimants allege that they did not know of the Carepoint Membership or that they would be charged for it, and that it is a completely useless service that Payment Systems, on behalf of itself and the other defendants, "sneaks into its merchant services in order [to] line the pockets of its owners."

54.     i3 Verticals is alleged to be the successor to Payment Systems, and i3 Verticals purchased the revenue streams of Payment Systems.  Not only do the Underlying Claimants allege that i3 Verticals is the successor to Payment Systems, they specifically allege that Payment Services was the agent of, or a joint venturer with, i3 Verticals, and that Payment Services "was acting within the course and scope of that relationship."  The Underlying Complaint alleges that each and every one of the acts and omissions alleged therein were performed by, and/or attributable to, all defendants, each acting as agents and/or employees, and/or under the direction and control of each other, and that said acts and failures to act were within the course and scope of said agency, employment and/or directions and control.  Thus, the Underlying Complaint alleges that payments were made for the direct or indirect benefit of i3 Verticals' owners.

55.     Therefore, any coverage under the Policy for the Underlying Lawsuit is excluded by virtue of Exclusion (o), and Starr owes no duty to defend or indemnify i3 Verticals in response to the Underlying Lawsuit.

## COUNT III

### Declaratory Judgment That There Is No Coverage Pursuant to Exclusion (e)

56.     Starr repeats and realleges paragraphs 1 through 55 of this Complaint for Declaratory Judgment as if fully set forth herein.

57.     Under Insuring Agreement C. of the D&O Coverage Section, Starr agreed to pay on behalf of i3 Verticals "Loss arising from a Claim…", subject to the other terms and conditions of the Policy.

58.     The Underlying Lawsuit is a "Claim," as that term is defined by the Policy, as it is a judicial proceeding for monetary, non-monetary and injunctive relief commenced against an Insured, commenced by the service of a Complaint or similar pleading.

59.     i3 Verticals is an "Insured" under the Policy.   "Insured" is defined as the "Company," which in turn includes the "Parent Company," which in turn is defined as the entity named in Item 1 of the Declarations.   i3 Verticals is the entity named in Item 1 of the Declarations of the Policy.

60.     However, under Exclusion (e), the Policy "shall not cover any Loss in connection with any Claim … based upon, arising from, or in consequence of any actual or alleged liability of any Insured under any express contract or agreement, except to the extent that such Insured would have been liable in the absence of such contract or agreement …"

61.     The Underlying Lawsuit is a Claim based upon, arising from, or in consequence of any actual or alleged liability of i3 Verticals under an express contract or agreement. Specifically, as set forth above and in the Underlying Complaint, the Underlying Lawsuit is based upon the existence of an improper contractual relationship between the parties, the failure of the defendants to provide the services required by that contract, the unconscionability of the terms of the contract and the improper way in which the contract was formed.  The Underlying Lawsuit seeks to recover from i3 Verticals based on liability under these very same agreements.

62.     And, i3 Verticals would not have any potential liability in the Underlying Lawsuit in the absence of such contract or agreement.  Without the existence of the allegedly unfair and

inequitable contract, the Underlying Claimants would not have made the payments complained of, would have had no right to the services they were denied, and they would have suffered none of the injuries of which they now complain.

63.     Therefore, any coverage under the Policy for the Underlying Lawsuit is excluded by virtue of Exclusion (e), and Starr owes no duty to defend or indemnify i3 Verticals in response to the Underlying Lawsuit.

## COUNT IV

## Declaratory Judgment That There Is No Coverage Pursuant to Exclusions (a) and/or (b)

64.     Starr repeats and realleges paragraphs 1 through 63 of this Complaint for Declaratory Judgment as if fully set forth herein.

65.     Under Insuring Agreement C. of the D&O Coverage Section, Starr agreed to pay on behalf of i3 Verticals "Loss arising from a Claim…", subject to the other terms and conditions of the Policy.

66.     The Underlying Lawsuit is a "Claim," as that term is defined by the Policy, as it is a judicial proceeding for monetary, non-monetary and injunctive relief commenced against an Insured, commenced by the service of a Complaint or similar pleading.

67.     i3 Verticals is an "Insured" under the Policy.  "Insured" is defined as the "Company," which in turn includes the "Parent Company," which in turn is defined as the entity named in Item 1 of the Declarations. i3 Verticals is the entity named in Item 1 of the Declarations of the Policy.

68.     However, under Exclusion (a), the Policy "shall not cover any Loss in connection with any Claim … arising out of, based upon or attributable to the gaining of any personal profit or advantage or improper or illegal remuneration if a final judgment or adjudication in an

underlying action establishes that such Insured was not legally entitled to such personal profit or advantage or that such remuneration was improper or illegal …"

69.     And, under Exclusion (b), the Policy "shall not cover any Loss in connection with any Claim … arising out of, based upon or attributable to any deliberate fraudulent act or any willful violation of law by an Insured if a final judgment or adjudication in an underlying action establishes that such act or violation occurred …"

70.     The Underlying Lawsuit alleges a host of allegations that it arises out of, is based upon or is attributable to (a) the gaining of any personal profit or advantage or improper or illegal remuneration and/or (b) any deliberately fraudulent act or any willful violation of law by i3 Verticals.

71.     In the event that final judgment or adjudication in the Underlying Lawsuit establishes that (a) i3 Verticals was not legally entitled to such personal profit or advantage or that such remuneration was improper or illegal, and/or (b) that such deliberate fraudulent act or willful violation of law occurred, any coverage under the Policy for the Underlying Lawsuit is excluded by virtue of Exclusions (a) and/or (b), and Starr owes no duty to defend or indemnify i3 Verticals in response to the Underlying Lawsuit.

## COUNT V

### Declaratory Judgment That There Is No Coverage Because the Underlying Lawsuit Does Not Allege Loss

72.     Starr repeats and realleges paragraphs 1 through 71 of this Complaint for Declaratory Judgment as if fully set forth herein.

73.     Under Insuring Agreement C. of the D&O Coverage Section, Starr agreed to pay on behalf of i3 Verticals "Loss arising from a Claim…", subject to the other terms and conditions of the Policy.

19

74.     The Underlying Lawsuit is a "Claim," as that term is defined by the Policy, as it is a judicial proceeding for monetary, non-monetary and injunctive relief commenced against an Insured, commenced by the service of a Complaint or similar pleading.

75.     i3 Verticals is an "Insured" under the Policy.  "Insured" is defined as the "Company," which in turn includes the "Parent Company," which in turn is defined as the entity named in Item 1 of the Declarations.  i3 Verticals is the entity named in Item 1 of the Declarations of the Policy.

76.     However, matters which may be deemed uninsurable under the applicable law are carved out of the definition of "Loss."

77.     The Underlying Lawsuit seeks the "restitutionary disgorgement of Defendants' ill-gotten gains and to restore to any Class member any money paid for illicit fees and charges" and "restitution from Defendants as well as an order from this Court requiring disgorgement of all profits, benefits, and other compensation obtained by Defendants by virtue of their wrongful conduct."

78.     i3 Verticals operates, and negotiated and purchased the Policy, from its principal place of business in Tennessee, and the Policy was delivered to i3 Verticals in Tennessee. Therefore, Tennessee law governs the interpretation of the Policy.

79.     While Tennessee law appears to be silent on the issue thus far, the majority of jurisdictions hold that restitution, disgorgement, or the restoration of an ill-gotten gain are uninsurable as a matter of law or outside the definition of "Loss."  Starr has a good faith basis to believe that a Tennessee Court would similarly find that restitution, disgorgement, and restoration of an ill-gotten gain are uninsurable.  And, to the extent such damages are uninsurable, they fall outside the definition of "Loss" under the Policy.

80. Therefore, there is no coverage triggered under the Policy for the Underlying Lawsuit because it does not allege any "Loss" as defined by the Policy that would trigger Starr's obligations under Insuring Agreement C., and Starr owes no duty to defend or indemnify i3 Verticals in response to the Underlying Lawsuit.

## COUNT VI

### Declaratory Judgment That i3 Verticals Shall Repay Defense Costs to Starr

81. Starr repeats and realleges paragraphs 1 through 80 of this Complaint for Declaratory Judgment as if fully set forth herein.

82. Starr has agreed to provide i3 Verticals a defense in response to the Underlying Lawsuit pursuant to a complete reservation of rights, including the right to recover any defense costs paid in the event it is determined that there is no coverage under the Policy for the Underlying Lawsuit.

83. The Policy specifically provides that "In the event and to the extent that the Insureds shall not be entitled to payment of such Loss under the terms and conditions of this policy, such payments by the Insurer shall be repaid to the Insurer by the Insureds …"

84. Therefore, to the extent that this Court determines that there is no coverage under the Policy for the Underlying Lawsuit, Starr is entitled to an award in its favor and against i3 Verticals in the amount of all payments made by Starr to defend and protect i3 Verticals in response to the Underlying Lawsuit.

WHEREFORE, Plaintiff, STARR INDEMNITY & LIABILITY COMPANY, respectfully requests that judgment be entered in its favor and against the Defendant, i3 VERTICALS, LLC FKA CHARGE PAYMENT, LLC, and prays that this Court:

a) Enter an Order declaring that, pursuant to the terms of the Policy, Starr owes no coverage and has no duty to indemnify or defend i3 Verticals in response to the

Underlying Lawsuit, and Starr may withdraw from the defense of i3 Verticals in the Underlying Lawsuit immediately and without penalty;

b) Enter an Order declaring that, pursuant to the terms of the Policy, i3 Verticals shall repay to Starr any payments Starr made to defend and protect i3 Verticals in the Underlying Lawsuit, and to enter an award in favor of Starr and against i3 Verticals in the amount of such payments;

c) Award Starr its costs incurred in this action; and

d) Order any such further relief as this Court may deem just and appropriate.

Plaintiff hereby demands trial by jury.

Respectively submitted,

LEWIS, THOMASON,
KING, KRIEG & WALDROP, P.C.


By:   /s/ Emily H. Mack
        Emily H. Mack, Esq., BPR No. 31217
        424 Church St., Ste. 2500
        Nashville, TN 37219
        Tel: 615-259-1366
        Fax 615-259-1389
        emack@lewisthomason.com

and

David W. Wilford (to be admitted *pro hac vice*)
Christopher T. Conrad (to be admitted *pro hac vice*)
Anthony D. Ingraffia (to be admitted *pro hac vice*)
WILFORD CONRAD LLP
18 E. Dundee Road
Building 6, Suite 150
Barrington, Illinois 60010
(224) 848-4721 – Telephone
(224) 848-5865 – Facsimile
cconrad@wilfordconrad.com
aingraffia@wilfordconrad.com

Attorneys for Plaintiff, STARR INDEMNITY & LIABILITY COMPANY

22