UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 3:16-cv-2832 Judge Aleta A. Trauger |
| i3 VERTICALS, LLC ) ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Pending before the court is a Response to an Order to Show Cause (Docket No. 45) filed by the plaintiff, Starr Indemnity and Liability Company ("Starr"), to which the defendant, i3 Verticals, LLC, AKA Charge Payment, LLC ("i3 Verticals") has filed a Supplemental Response (Docket No. 50), and Starr has filed a Reply (Docket No. 54). For the reasons discussed herein, the court finds that diversity exists between the parties and thus the requirements for subject matter jurisdiction are satisfied.

**BACKGROUND**

Starr is an insurance company incorporated in Texas with its principal place of business in New York. i3 Verticals is a Delaware limited liability company with its principal place of business in Tennessee. As relates to this litigation, i3 Verticals is an independent services operator that facilitates credit and debit card payments for merchants. i3 Verticals specializes in enrolling small and medium-sized merchants in merchant services. On October 31, 2015, Starr and i3 Verticals entered into a Resolute Portfolio for Private Companies Policy ("Policy"), under which Starr issued insurance to i3 Verticals covering a broad swath of potential liability. The

1

Policy applies to claims filed during the period dating from October 31, 2015 to October 31, 2016. On June 14, 2016, a class of merchants filed suit against i3 Verticals and its affiliated companies, alleging a host of improper business practices. The complaint further alleges that i3 Verticals is liable for the improper conduct of its affiliated companies.

On August 23, 2016, i3 Verticals notified Starr of the merchants' lawsuit and requested coverage from Starr pursuant to the Policy. Starr investigated the claims and concluded that the Policy does not provide coverage for the merchants' lawsuit. Starr nevertheless agreed to defend i3 Verticals against the lawsuit, pursuant to full and complete reservation of rights, including the right to seek recoupment of all fees and costs incurred in the defense. On November 3, 2016, Starr filed a Complaint in this court, seeking a declaratory judgment that the Policy does not provide coverage to i3 Verticals for the merchants' lawsuit. (Docket No. 1.) Starr claimed that the case was properly filed in federal court because diversity jurisdiction exists between the parties under 28 U.S.C. § 1332.

On January 4, 2017, the magistrate judge issued an Initial Case Management Order, in which he ordered i3 Verticals to confirm the residency of its LLC members to substantiate that this court has jurisdiction over this case. (Docket No. 18). In response, i3 Verticals submitted a Member Residency Disclosure on January 18, 2017. (Docket No. 21.) The Member Residency Disclosure listed four individuals, who, according to i3 Verticals, are members residing in either New York or Texas, thus destroying diversity:

| Full Name | Residence | Work State |
|---|---|---|
| Halpern, Ian H | NY | NY |
| Richer, Jack | NY | NY |
| Toppino, Christopher T | NY | NY |
| Wilding, Craig | TX | OH |

These individuals (collectively the "Contested Members") entered into Class P Unit Agreements with i3 Verticals, whereby they gained ownership over certain Class P Units. The individuals did not sign counterparts of the Charge Payment, LLC Agreement[1] (hereinafter the "Operating Agreement"), which governs the process and procedures of adding members to the company.

On January 19, 2017, the court ordered Starr to show cause that the parties are diverse for the purposes of jurisdiction. (Docket No. 22.) On January 27, 2017, Starr filed a Response and Motion for Leave to Issue Limited Discovery Regarding Jurisdiction (Docket No. 23), to which i3 Verticals filed a Response. (Docket No. 26.) The court initially denied Starr's Motion on February 13, 2017, finding that Starr had not established diversity jurisdiction. (Docket No. 29.) On February 23, 2017, Starr filed a Motion to Alter Judgment Pursuant to Rule 59(e) (Docket No. 31), to which i3 Verticals filed a Response (Docket No. 34), and Starr filed a Reply (Docket No. 35). Starr argued that it had sufficient evidence to warrant discovery regarding the jurisdictional question, and, on April 19, 2017, the court granted Starr's Motion to Alter and vacated the prior order denying Starr's Motion for Discovery. (Docket No. 38.) Starr subsequently conducted discovery regarding jurisdiction and, on July 30, 2017, filed a Response to the court's original Order to Show Cause (Docket No. 45), to which i3 Verticals filed a Supplemental Response (Docket No. 50), and Starr filed a Reply (Docket No. 54).

## **LEGAL STANDARD**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the

---

[1] i3 Verticals, LLC was formerly known as Charge Payment, LLC.

contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted). Under 28 U.S.C. § 1332, the court has diversity jurisdiction over cases between "citizens of different States," so long as the "matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a)(1). Subject to exceptions not relevant here, federal diversity jurisdiction exists "only when no plaintiff and no defendant are citizens of the same state." *Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.*, 176 F.3d 904 (6th Cir. 1999). "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). For the purposes of diversity jurisdiction, limited liability companies have the citizenship of each partner or member. *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009).

## ANALYSIS

i3 Verticals argues that there is not complete diversity between the parties because the Contested Members share residence with Starr: Halper, Richer, and Toppino in New York, and Wilding in Texas. Starr does not dispute the Contested Members' residence in those states. The crux of this dispute is thus whether the Contested Members are in fact members of i3 Verticals for jurisdictional purposes. The court concludes that they are not.

Because i3 Verticals is a Delaware Limited Liability Company, it is governed by the provisions of the Delaware Limited Liability Company Act, Del. Code Ann. tit. 6, §18-101, *et seq.* ("the DLLCA"). Under 6 §18-301(b) of the DLLCA, members admitted after formation of an LLC must be admitted "upon compliance with the limited liability company agreement" when the agreement so provides. *Id*. at 6 §18-301(b). The i3 Verticals Limited Liability Company

Agreement ("the Operating Agreement") provides in Section 3.3 that new members must sign a counterpart copy of the Operating Agreement in order to be admitted:

> As a condition to being admitted as a Member of the Company, any Person must agree to be bound by the terms of this Agreement, as amended, by executing and delivering a counterpart signature page to this Agreement, as amended.

(Docket No. 47, at 14.) The Operating Agreement defines "Members" as "any Person executing this Agreement as of the Effective Date as a member of the Company or thereafter admitted to the Company as a member as provided in this Agreement." *Id*. at 9.

i3 Verticals contends that the Contested Members gained membership via an ownership interest in i3 Verticals pursuant to Class P Unit Agreements, entered into between i3 Verticals and each of the Contested Members from 2014 to 2016. i3 Verticals' position is that it is in full compliance with Section 3.3 of the Operating Agreement because the Class P Unit Agreements constitute counterparts to the Operating Agreement. In support, i3 Verticals cites Section 17 of the Class P Unit Agreements:

> This Agreement constitutes the entire agreement of whatsoever kind
> or nature existing between or among the parties with respect to the subject matter contained herein and no person shall be entitled to benefits other than those specified herein; provided, however, that **the parties acknowledge that [the Class P Unit Purchaser], as a Member, shall also have the rights and obligations of a Member
> under the Operating Agreement**.

(Docket No. 48, at 83) (emphasis added.) While this language may evince an intent on behalf of i3 Verticals to confer membership on the Contested Members, the Class P Unit Agreements are not counterparts to the Operating Agreement and do not contain counterpart signature pages to the Operating Agreement. The Class P Unit Agreements are, therefore, contractually insufficient vehicles for adding members under the terms of the Operating Agreement.

5

The explicit policy of the DLLCA counsels a strict interpretation of Limited Liability Agreements: "It is the policy of this chapter to give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements." Del. Code Ann. tit. 6, §18-1101(b). Section 3.3 of the Operating Agreement is unequivocal in its requirements for additional membership: new members must agree to be bound by the terms of the Operating Agreement and sign a counterpart signature page to the Operating Agreement. The Class P Unit Agreements are materially different contracts from the Operating Agreement. The two Agreements are between different parties, cover different subject matter, and are governed by different law. The Class P Unit Agreements supersede the Operating Agreement should the documents conflict, indicating that the Contested Members are not bound by the terms of the Operating Agreement: "If there is a conflict between the provisions of the Operating Agreement and the provisions of [the Class P Unit Agreement], the provisions of the [Class P Unit Agreement] shall govern." (Docket No. 48, at 80, 93, 106, 117.) And the Class P Unit Agreements do not contain a counterpart signature page to the Operating Agreement.

Because the Class P Unit Agreements do not, and cannot, function as counterparts to the Operating Agreement, the Class P Unit Agreements do not satisfy Section 3.3 of the Operating Agreement. Thus, the Contested Members are not members of i3 Verticals. No remaining members of i3 Verticals reside in New York or Texas. Starr Indemnity has therefore established diversity jurisdiction under 28 U.S.C. § 1332.

## **CONCLUSION**

For the foregoing reasons, the court finds that Starr has shown cause that diversity exists between the parties.

It is so **ORDERED**.

Enter this 12th day of October 2017.

                                              ALETA A. TRAUGER
                                              United States District Judge