UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:16-cv-2832 |
| | ) | Judge Aleta A. Trauger |
| i3 VERTICALS, LLC | ) ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the court are three motions. The first is a Motion for Reconsideration[1] (Docket No. 72) filed by the defendant, i3 Verticals, LLC, aka Charge Payment, LLC ("i3 Verticals"), to which the plaintiff, Starr Indemnity and Liability Company ("Starr"), has filed a Response (Docket No. 82). The second is a Motion to Dismiss Count II of Defendant's Counterclaim (Docket No. 79) filed by Starr, to which i3 Verticals has filed a Response (Docket No. 92), and Starr has filed a Reply (Docket No. 98). The third is a Motion for Judgment on the Pleadings (Docket No. 81) filed by Starr, to which i3 Verticals has filed a Response (Docket No. 86), Starr has filed a Reply (Docket No. 90), and i3 Verticals has filed a Sur-Reply (Docket No. 99). For the reasons discussed herein, the motions will all be denied.

## BACKGROUND

Starr is an insurance company. i3 Verticals is an independent services operator that facilitates credit and debit card payments for merchants. i3 Verticals specializes in enrolling small-

---

[1] i3 Verticals seeks reconsideration of this court's Order imposing a discovery stay (Docket No. 70). Because, as explained below, discovery is not necessary for the disposition of Starr's Motion for Judgment on the Pleadings and a case management conference will be rescheduled, i3 Verticals' motion will be denied as moot.

1

and medium-sized merchants in merchant services. On October 31, 2015, Starr and i3 Verticals entered into a Resolute Portfolio for Private Companies Policy ("Policy"), under which Starr issued insurance to i3 Verticals covering a broad swath of potential liability. The Policy applies to claims filed during the period dating from October 31, 2015 to October 31, 2016. On June 14, 2016, a class of merchants ("Underlying Claimants") filed suit in California state court against four companies: Merchant Processing Solutions, LLC ("Payment Systems"), Carepoint Managed Services, LLC ("Carepoint"), The Financial Systems Company, LLC ("FSC"), and i3 Verticals. (Docket 1-2.) The Underlying Claimants' complaint ("Underlying Complaint") alleges that Payment Systems engaged in a host of improper practices related to merchant services for payments made via credit and debit cards. Payment Systems offered these services—including payment processing services, payment processing equipment leasing, monthly billing, collections, and attendant customer service—to small businesses. In its Complaint, Starr summarizes the allegations in the Underlying Complaint as follows:

> The Underlying Claimants allege that Payment Systems and its affiliated companies, including i3 Verticals, perpetrate and profit from a scheme to defraud merchants. **Payment Systems** targets small "mom and pop" merchants with false promises of savings by reducing costs for merchant services if they switch providers and "induce 'mom and pop' merchants to purchase merchant services via every type of artifice and deception in the book, including but not limited to (a) failing to disclose fees they know the merchant will be charged; (b) affirmatively misrepresenting to merchants they will not be charged fees they know will be charged; (c) informing merchants that by signing they are only agreeing to 'apply' for services when in fact their signatures bind them to long-term, non-cancellable deals; (d) promising agreed-upon pricing information will be written on the contract documents after the merchant signs and then later including much higher pricing information; (e) forging merchant signatures and initials on contract documents; (f) burying unconscionable provisions that are never discussed with customers in the middle of fine print contract documents; and (g) attempting to ensure that the merchant does not read the contract document before signing.

2

(Docket No. 1 at 8 (quoting Docket No. 1-2 at 12) (emphasis added).)

Indeed, the bulk of the Underlying Complaint is comprised of factual allegations against Payment Systems. For example, Payment Systems allegedly charged merchants fees for worthless "Carepoint memberships" that Payment Systems included in its merchant contracts without notifying merchants. As a result, Underlying Claimants were charged $20 monthly for a "membership" that provided no benefit or service and of which they were unaware. This allegation is typical of those brought in the Underlying Complaint, both in the nature of the behavior alleged and in the entity against whom it is alleged: Payment Systems. i3 Verticals is primarily implicated as a successor-in-interest to Payment Systems. (*See* Docket No. 1-2 at 24 ("PAYMENT SYSTEMS committed its unlawful, unfair, and fraudulent activities at the direction of, in coordination with, or for the benefit of CAREPOINT and FSC. [i3 Verticals] is liable for such activities as the successor-in-interest to PAYMENT SYSTEMS.").) This claim of successorship is supported by a lone factual allegation: "[i3 Verticals] is believed to be a successor to PAYMENT SYSTEMS, having issued a press release indicating that it acquired some or all of PAYMENT SYSTEMS' assets and revenue streams in or about June 2014." (Docket No. 1-2 at 14.) The only other allegations made against i3 Verticals come in the form of blanket conclusions attributing all liabilities to all defendants:

> Plaintiffs are informed, believed, and thereupon allege that each of the Defendants herein was, and at all times relevant to this action, is, the agent or joint venture of the remaining Defendants and was acting within the course and scope of that relationship. Plaintiffs are further informed and believe, and thereupon allege, that each of the Defendants herein gave consent to, ratified, and authorized the acts alleged herein of the remaining Defendants. Defendants are sued both in their own right and on the basis of *respondeat superior*. Plaintiffs are further informed and believe, and thereon allege, that each and every one of the acts and omissions alleged herein were performed by, and/or attributable to, all Defendants, each acting as

agents and/or employees, and/or under the direction and control of each of the other Defendants, and that said acts and failures to act were within the course and scope of said agency, employment, and/or directions and control.

(*Id*. at 14–15.) The Underlying Claimants bring five causes of action against i3 Verticals and the other defendants: improper business practices, breach of contract, breach of the covenant of good faith and fair dealing, unconscionability, and unjust enrichment. Each cause of action alleges collective conduct using the catchall term "defendants." (*See*, *e.g.*, *id*. at 29 ("Defendants violated the agreements by, including but not limited to, charging merchants for Carepoint membership services that were never provided.").)

On August 23, 2016, i3 Verticals notified Starr of the merchants' lawsuit and requested coverage from Starr pursuant to the Policy. Starr investigated the claims and concluded that the Policy does not provide coverage for the merchants' lawsuit. The Policy's relevant insuring agreement states:

> C. The **Insurer** shall pay on behalf of the **Company** the **Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable), against the **Company** for any **Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy.

(Docket No. 1-1 at 18 (emphasis in original).) The bolded terms are defined in the Policy. "Claim" is defined in relevant part as any "judicial . . . proceeding, whether civil or criminal, for monetary . . . relief commenced against an **Insured."** (*Id*. at 19.) "Loss" includes, among other things, damages, settlements, judgments, and defense costs. (*Id*. at 20.) "Wrongful Act" is defined as, "with respect to [i3 Verticals], any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by [i3 Verticals]." (*Id*. at 22.) The Policy contains two coverage exclusions that, according to Starr, govern this dispute. The exclusions, excerpted in relevant part as follows, provide that:

4

> This policy shall not cover any **Loss** in connection with any **Claim**:
> . . .
> (e) based upon, arising from, or in consequence of any actual or alleged liability of any **Insured** under any express contract or agreement, except to the extent that such **Insured** would have been liable in the absence of such contract or agreement;
> . . .
> (s) alleging, arising out of, based upon or attributable to the rendering or failure to render any professional service to a customer or client of the **Insured**;

(*Id*. at 22–25 (emphasis in original).) Starr contends that the merchants' claims against i3 Verticals fall into these exclusions and that Starr is therefore not obligated to cover costs associated with the underlying lawsuit. On October 6, 2016, Starr advised i3 Verticals that, pursuant to these exclusions, the Policy did not cover the Underlying Claimants' suit. On October 18, 2016, i3 Verticals challenged Starr's decision and demanded coverage under the Policy. In a letter to counsel for Starr, counsel for i3 Verticals wrote:

> Starr's denial of its duty to defend i3 Verticals in the referenced lawsuit, as set forth in your letter of October 6, 2016, is both a breach of contract and a breach of the implied covenant of good faith and fair dealing, otherwise known as "bad faith." Should Starr continue to deny its duty to defend its insured in connection with the captioned litigation, i3 Verticals will have no choice but to resort to all legal remedies available to it, including but not limited to initiating suit against Starr and/or reporting its conduct to the office of the California Insurance Commissioner. So as to avoid this scenario, we urge Starr to retract its denial of coverage and accept its contractual obligation to defend its insured.

(Docket No. 71-2 at 1.)

Starr subsequently reversed course and agreed to defend i3 Verticals against the lawsuit, pursuant to a full and complete reservation of rights, including the right to seek recoupment of all fees and costs incurred in the defense. Starr notified i3 Verticals of its decision to provide a defense on November 3, 2016, the same day Starr filed its Complaint in this court, seeking declaratory judgment that, due to the relevant exclusions, the Policy does not provide coverage to i3 Verticals

5

for the merchants' lawsuit and Starr is entitled to repayment of defense costs paid to i3 Verticals. (Docket No. 1.) Starr thereafter defended i3 Verticals in the underlying lawsuit. On September 29, 2017, i3 Verticals and the merchants reached an agreement in principle on a class-wide settlement. The parties are currently working toward class certification and final court approval of the settlement. On April 23, 2018, i3 Verticals filed an Answer and Counterclaim (Docket No. 71), bringing counterclaims for breach of contract and breach of the covenant of good faith and fair dealing based on Starr's initial denial of coverage, conditions that Starr allegedly imposed in reversing its denial of coverage, and Starr's alleged refusal to contribute to settlement of the underlying lawsuit. On May 21, 2018, Starr filed a Motion for Judgment on the Pleadings (Docket No. 81), requesting that the court enter judgment declaring that Starr owes no duty to defend or indemnify i3 Verticals based on the Policy's exclusions.

## APPLICABLE LEGAL STANDARDS

Rule 12(c) of the Federal Rules of Civil Procedure provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Rule 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions are evaluated under the same standard of review. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Accordingly, the court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). Although the court's decision regarding a 12(c) motion for judgment rests primarily upon the parties' pleadings, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be

taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

## ANALYSIS

1. Motion for Judgment on the Pleadings

Starr contends that it has no duty to defend or indemnify i3 Verticals because the facts as alleged in the Underlying Complaint fall squarely within the Policy's professional services and contract exclusions and that, therefore, it is entitled to judgment on the pleadings because no dispute of material fact exists. The insurer's duty to defend its insured and the scope of coverage in the insurance policy are legal issues. *Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 5–6 (Tenn. Ct. App. 1998). The broader duty to defend an insured is a distinct and independent duty from the duty of an insurer to indemnify its insured. *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996).

To determine whether an insurer has a duty to defend, the court must look only to the factual allegations in the Underlying Complaint. *See Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co.*, 499 F. App'x 559, 568 (6th Cir. 2012); s*ee also Topmost Chem. & Paper Corp. v. Nationwide Ins. Co.*, No. 01-2588V, 2002 WL 1477880, at *4 (W.D. Tenn. Apr. 23, 2002) (citing *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994). "[T]he obligation of a liability insurance company to defend an action brought against the insured by a third party is to be determined solely by the allegations contained in the complaint in that action . . . . [T]he pleading test for determination of the duty to defend is based *exclusively on the facts as alleged* rather than on the facts as they actually are." *St. Paul Fire & Marine*, 879 S.W.2d at 835 (emphasis added).[2] No insurer may refuse to defend an insured unless the facts as alleged in the

---

[2] Unlike the duty to defend, the duty to indemnify is determined on the basis of a full factual record. *See St. Paul Fire & Marine*, 879 S.W.2d at 835 ("Whereas the duty to defend depends only upon the facts as alleged to be, the duty to indemnify, *i.e.*, ultimate liability, depends rather upon the

underlying complaint cannot "bring the case within or potentially within the policy's coverage." *Id.* (quoting *Glens Falls Ins. Co. v. Happy Day Laundry, Inc.*, No. 19784, 1989 WL 91082 (Tenn. Ct. App. August 14, 1989)). "Although the court must accept the allegations as they are pled in the underlying action, the court is not bound by the draftsman's legal conclusions." *Guideone Am. Ins. Co. v. Perry*, No. 2:15-CV-2085-SHL-CGC, 2016 WL 7497583, at *3 (W.D. Tenn. Apr. 12, 2016).

Starr first argues that the allegations in the Underlying Complaint fall into the professional services and contract exclusions because i3 Verticals is liable for the actions of Payment Systems. The Underlying Complaint indeed sets forth factual allegations against Payment Systems that could plausibly fall into one or both of these exceptions.[3] But the assertion that "[i3 Verticals] is liable for such activities as the successor-in-interest to PAYMENT SYSTEMS," (Docket No. 1-2 at 24), is a legal conclusion, not a factual one. *See Third Nat. Bank in Nashville v. Showbiz Pizza Time, Inc.*, 60 F.3d 829 (6th Cir. 1995) ("Third National alleges that 'Thus, following the spinoff, Showbiz was in fact the successor to and the substantial continuation of pre-spinoff Integra.' However, this is the type of legal conclusion to which the court does not afford liberal review."); *Nova Molecular Techs., Inc. v. Penn Specialty Chemicals, Inc.*, No. 08-2039-STA, 2009 WL 564433, at *5 (W.D. Tenn. Mar. 5, 2009) ("Plaintiff only states in conclusory fashion that PennAkem is the successor-in-interest to Penn. This is the type of legal conclusion to which the court does not afford liberal review under Rule 12(b)(6)."); *Sullivan v. Dollar Tree Stores, Inc.*,

---

true facts."). Whether Starr has a duty to indemnify thus cannot be determined on its motion for judgment on the pleadings.

[3] In brief, Starr's arguments are that (1) the Underlying Claimants' claims arise from alleged contractual liability under Payment Systems' merchant contracts and therefore implicate the contract exclusion, and; (2) the Underlying Claimants' claims are based on Payment Systems' alleged rendering or failure to render merchant services to the Underlying Claimants, thus implicating the professional services exclusion.

9

623 F.3d 770, 777 (9th Cir. 2010) ("[T]he district court properly held that the . . . legal conclusion that [Defendant] is a successor in interest . . . does not create a genuine issue of material fact."). The only factual content pled in the Underlying Complaint in support of the conclusion that i3 Verticals is a successor-in-interest to Payment Systems is that "[i3 Verticals] is believed to be a successor to PAYMENT SYSTEMS, having issued a press release indicating that it acquired some or all of PAYMENT SYSTEMS' assets and revenue streams in or about June 2014." (Docket No. 1-2 at 14.)

That i3 Verticals acquired some or all of Payment Systems' assets or revenue streams is insufficient under Tennessee law to establish that i3 Verticals assumed Payment Systems' liabilities. "Generally, a corporation that purchases the assets of another corporation does not automatically become liable for the selling company's obligations." *Mapco Exp., Inc. v. Interstate Entm't, Inc.*, No. 3:08-CV-1235, 2011 WL 12556959, at *14 (M.D. Tenn. Aug. 11, 2011) (citing *Johnson v. Tanner–Peck, LLC*, No. W2009–02454–COA–R3–CV, 2011 WL 1330777, at *13 (Tenn. Ct. App. Apr. 08, 2011). There are four recognized exceptions to this rule: (1) where the purchasing corporation expressly or implicitly agrees to assume the selling corporation's liabilities; (2) where the transaction amounts to a consolidation or merger of the two corporations; (3) where the purchasing corporation is a mere continuation of the selling corporation; and (4) where the transaction is entered into fraudulently, in order to escape liability for the obligations of the selling corporation. *Id.* In order to state a claim for successor liability, a plaintiff must allege both: (1) that a transfer of assets has taken place, and (2) that a state law exception to the general rule regarding successor liability applies. *Nova Molecular Techs., Inc.*, No. 08-2039-STA at *4–5. The Underlying Complaint pleads only that a transfer of some assets has taken place. There is no factual allegation in the Underlying Complaint that would satisfy any of the four exceptions

enumerated above.  Because the duty to defend is determined exclusively by the facts as alleged in the Underlying Complaint, the Policy exclusions are not implicated by the legal conclusion that i3 Verticals is a successor-in-interest to Payment Systems.

Starr next alleges that the Underlying Complaint also makes factual allegations against i3 Verticals.  In support, Starr points to the following passage:

> Plaintiffs are informed, believed, and thereupon allege that each of the Defendants herein was, and at all times relevant to this action, is, the agent or joint venture of the remaining Defendants and was acting within the course and scope of that relationship.  Plaintiffs are further informed and believe, and thereupon allege, that each of the Defendants herein gave consent to, ratified, and authorized the acts alleged herein of the remaining Defendants.  Defendants are sued both in their own right and on the basis of *respondeat superior*.  Plaintiffs are further informed and believe, and thereon allege, that each and every one of the acts and omissions alleged herein were performed by, and/or attributable to, all Defendants, each acting as agents and/or employees, and/or under the direction and control of each of the other Defendants, and that said acts and failures to act were within the course and scope of said agency, employment, and/or directions and control.

(*Id*. at 14–15.)  Courts considering similar boilerplate language have held that it constitutes legal conclusions, not factual allegations.  In *Mindlab Media, LLC. v. LWRC Int'l LLC*, No. CV 11-3405 CAS FEMX, 2012 WL 386695 (C.D. Cal. Feb. 6, 2012), the plaintiffs attempted to hold the defendants vicariously liable for actions extensively attributed to a third party "by alleging that [the defendants] acted as 'the alter egos, agents, servants, employees, and joint ventures [sic] of each of the other [d]efendants,' and that all defendants 'were acting within the course and scope of such relationship and/or agreement and with the actual and/or implied knowledge, permission, consent, ratification and approval of the other Defendants.'" *Id*. at *4.  These allegations, the court held, were "legal conclusions" that were "unsupported by any facts." *Id*.  In *Biggins v. Wells Fargo & Co.*, 266 F.R.D. 399 (N.D. Cal. 2009), the court found that the plaintiffs' allegations—

11

that a defendant was an agent, subsidiary, parent, joint venturer, or predecessor of another defendant—were "nothing more than bare legal conclusions, which the [c]ourt need not accept as true." *Id.* at 414; *see also Imageline, Inc. v. CafePress.com, Inc.*, 2011 WL 1322525, *4 (C.D. Cal. Apr. 6, 2011) ("The only allegations . . . made by [plaintiff]—that each defendant was the 'agent, partner, servant, supervisor, employee, successor and/or joint venturer of each of the remaining defendants and was at all times . . . acting within the course and scope, and purpose of said agency, employment, business enterprise and joint venture,' . . . are nothing more than legal conclusions."); *Brown v. Fed'n of State Med. Boards of U.S.*, No. 82 C 7398, 1985 WL 1659, at *5 (N.D. Ill. May 31, 1985) ("Brown argues that the defendants were agents or joint venturers with the State of Illinois. But he has not offered any fact, either through evidentiary material or simple argument, that would support these legal conclusions.") (internal citation omitted).

The court finds the approach of its sister courts persuasive and thus finds that the passage cited by Starr is comprised of legal conclusions, not factual allegations. A common sense reading of the Underlying Complaint bolsters this finding. The passage is in the section of the Underlying Complaint captioned "PARTIES" rather than the section captioned "COMMON FACTUAL ALLEGATIONS." (Docket No. 1-2 at 13-17.) The "COMMON FACTUAL ALLEGATIONS" section details, over the course of ten pages, specific conduct attributed directly to Payment Systems. There is no factual allegation in the section of any conduct attributable directly to i3 Verticals. Reading the Underlying Complaint as a whole, it is clear to the court that the passage cited by Starr simply restates the conclusion that i3 Verticals is legally liable for Payment Systems' actions; the passage does not represent unique factual assertions unfound and unexplained in the section outlining the Underlying Claimants' factual allegations. Likewise, the broad use of the catchall "defendants" in enumerating each cause of action does not imbue the Underlying

12

Complaint with new factual allegations not detailed in the fact section. Thus, because there are no factual allegations in the Underlying Complaint that i3 Verticals provided professional services to, or entered into contracts with, the Underlying Claimants, the Policy exclusions do not apply.

In its Reply, Starr raises for the first time an argument that coverage under the Policy was never triggered in the first instance by the Underlying Complaint. The argument, made in response to the contention that the Underlying Complaint does not allege wrongdoing by i3 Verticals, hinges on the Policy's definition of "Wrongful Act." The Policy requires Starr to provide coverage for any "**Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable), against the **Company** for any **Wrongful Act** . . . ." (Docket No. 1-1 at 18 (emphasis in original).) "Wrongful Act" is defined as, "with respect to [i3 Verticals], any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act *by [i3 Verticals]*." (*Id*. at 22 (emphasis added).) By successfully establishing that the Underlying Complaint does not allege any breach, neglect, error, or act of its own doing, i3 Verticals has perhaps proven too much. By i3 Verticals' own telling, the Underlying Complaint does not allege any "Wrongful Act," as defined under the Policy, by i3 Verticals, but rather by Payment Systems. In its Sur-Reply, i3 Verticals contends that the Underlying Complaint does in fact allege a "Wrongful Act" by i3 Verticals, specifically "that i3 Verticals is liable as either the agent of or successor in interest to Payment Systems (which are both pled in conclusory fashion)." (Docket No. 99 at 7–8.) Even construing the Policy "liberally" in favor of i3 Verticals and "strictly" against Starr, *Elsner v. Walker*, 879 S.W.2d 852, 854–55 (M.D. Tenn. 1994) (*citing Alvis v. Mutual Benefit Health & Accident Ass'n*, 297 S.W.2d 643, 646 (Tenn. 1956)), this legal conclusion plainly falls outside the contours of the Policy's definition of "Wrongful Act," which is limited to acts or omissions committed by i3 Verticals.

However, as i3 Verticals also notes, Starr's Complaint does not seek declaratory relief that no "Wrongful Act" is alleged in the Underlying Complaint and that coverage, therefore, was never triggered. "A motion under 12(c) is . . . analyzed similarly to a motion under Rule 12(b)(6), in that the outcome turns exclusively on the pleadings." *Rahman El v. First Franklin Fin. Corp.*, No. 09-CV-10622, 2009 WL 3876506, at *4 (E.D. Mich. Nov. 17, 2009). A plaintiff has an "obligation to provide the 'grounds' of his 'entitle[ment] to relief'" in its pleading. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555). "[T]he statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id*.

Starr's Complaint brings six counts for declaratory relief. The first four claim that coverage under the Policy is excluded pursuant to various exclusions. The sixth claims that Starr is entitled to repayment of defense costs.[4] The fifth count is the only count that claims coverage is not triggered in the first instance by the Underlying Complaint, and that count deals exclusively with whether "restitution, disgorgement, or the restoration of ill-gotten gain" constitute "Loss" under the Policy. (Docket No. 1 at 20.) There is simply no claim or count in Starr's pleading giving i3 Verticals fair notice that Starr seeks relief on the grounds that the Underlying Complaint does not allege a "Wrongful Act" and therefore does not trigger coverage under the Policy. i3 Verticals claims that Starr should be estopped from pursuing this line of argument because Starr waited 18 months to raise it. Such a determination is not necessary at this time and is better resolved on a motion to amend, should Starr choose to file one. Starr's Motion for Judgment on the Pleadings will be denied.

---

[4] In its Motion for Judgment on the Pleadings, Starr pursues only the counts based on two exclusions, (e) and (s), and the count seeking repayment of defense costs paid.

14

2. Motion to Dismiss Counterclaim

Count II of i3 Verticals' Counterclaim seeks relief for Starr's alleged bad faith in its conduct related to the Policy. "An insurance policy is a contract . . . ." *Christenberry v. Tipton*, 160 S.W.3d 487, 492 (Tenn. 2005). Accordingly, when a policy holder suffers a covered loss, but the insurer fails to pay, the policy holder has legal recourse in the form of a breach of contract action. *See, e.g., Hood v. Jenkins*, 432 S.W.3d 814, 823 (Tenn. 2013); *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 385 (Tenn. 2009). The Tennessee General Assembly, however, has supplemented a policy holder's common law rights with certain additional statutory protections targeted at specific insurance industry practices. *See, e.g.*, Tenn. Code Ann. § 56–7–109 (requiring prompt payment of covered health insurance claims). Among those additional protections is Tennessee's statute authorizing additional damages for bad faith refusal to pay, Tenn. Code Ann. § 56–7–105. That statute provides:

> The insurance companies of this state, and foreign insurance companies and other persons or corporations doing an insurance or fidelity bonding business in this state, in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy or fidelity bond on which the loss occurred, shall be liable to pay the holder of the policy or fidelity bond, in addition to the loss and interest on the bond, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that the failure to pay inflicted additional expense, loss, or injury including attorney fees upon the holder of the policy or fidelity bond; and provided, further, that the additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury including attorney fees thus entailed.

Tenn. Code Ann. § 56–7–105(a). To establish a claim under the bad faith statute, a plaintiff must demonstrate "(1) that the insurance policy, by its terms, became due and payable; (2) that a formal demand for payment was made; (3) that [the insured] waited sixty days after making demand

before filing suit; and (4) that [the insurer's] refusal to pay was not in good faith." *Williamson v. Aetna Life Ins. C*o., 481 F.3d 369, 378 (6th Cir. 2007) (citing *Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986)). The insured bears the burden of proving bad faith on the part of the insurer. *Id*. Tennessee does not recognize a general common law tort for bad faith by an insurer against an insured; the exclusive remedy for such conduct is statutory, provided by § 56-7-105.[5] *Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co.*, 590 F. Supp. 2d 970, 972 (M.D. Tenn. 2008) (Nixon, J.), *aff'd on alternate grounds*, 499 F. App'x 559 (6th Cir. 2012) (citing *Fred Simmons Trucking, Inc. v. U.S. Fidelity and Guar. Co.*, 2004 WL 2709262 at *5 (Tenn. Ct. App. 2004); *Persian Galleries, Inc. v. Transcontinental Ins. Co.*, 38 F.3d 253, 260 (6th Cir. 1994); *Rice v. Van Wagoner Cos., Inc*., 738 F. Supp. 252, 253 (M.D. Tenn. 1990); *Chandler v. Prudential Ins. Co*., 715 S.W.2d 615 (Tenn. Ct. App. 1986).

Starr argues that i3 Verticals fails to establish the second and fourth prongs of the bad faith test.[6] First, it argues that that i3 Verticals does not satisfy the "formal demand for payment" prong

---

[5] It is unclear from i3 Verticals' Answer and Counterclaim whether it attempts to bring a common law breach of duty of good faith and fair dealing claim in addition to seeking statutory relief. Because Tennessee does not recognize a general common law tort for bad faith by an insurer against an insured, the court will construe the count as only seeking statutory relief.

[6] Starr also argues that the count should be dismissed because i3 Verticals cites the wrong statute in its Counterclaim. Indeed, i3 Verticals cites T.C.A. § 56-8-105 instead of T.C.A. § 56-7-105. Section 56-8-105 describes unfair claims practices by insurance companies that can only be enforced by the Commissioner of the Tennessee Department of Commerce and Insurance. T.C.A. § 56-8-101(c). But the content of the counterclaim makes clear the grounds on which i3 Verticals seeks relief. (*See* Docket No. 71 at 18 ("In Tennessee, an insurer has a duty to deal with its insured fairly and in good faith . . . Starr's failure to investigate followed by its denial of coverage, followed by its reversal and agreement to provide a defense with unreasonable conditions, followed by its refusal to participate in i3 Verticals' efforts to settle the Underlying Lawsuit, was unreasonable and a breach of the implied covenant of good faith and fair dealing as well as a violation of T.C.A. § 56-8-105.") (internal citation and quotation mark omitted).) Despite the incorrect statutory citation, the allegations put Starr on notice of what the claim entails and what facts support it. And, recognizing as much, Starr has briefed the issue in full. Because the arguments on both sides are fully before the court, dismissal without prejudice would only unnecessarily delay resolution of the claim.

because i3 Verticals demanded coverage under the Policy, not payment. The relevant portion of i3 Verticals' demand states:

> Starr's denial of its duty to defend i3 Verticals in the referenced lawsuit, as set forth in your letter of October 6, 2016, is both a breach of contract and a breach of the implied covenant of good faith and fair dealing, otherwise known as "bad faith." Should Starr continue to deny its duty to defend its insured in connection with the captioned litigation, i3 Verticals will have no choice but to resort to all legal remedies available to it, including but not limited to initiating suit against Starr and/or reporting its conduct to the office of the California Insurance Commissioner. So as to avoid this scenario, we urge Starr to retract its denial of coverage and accept its contractual obligation to defend its insured.

(Docket No. 71-2 at 1.)[7] According to Starr, a demand for coverage absent a specific demand for monetary payment is insufficient to satisfy the statutory requirements of the second prong. In support, Starr relies on this court's decision in *Cracker Barrel*;[8] however, Starr misreads *Cracker Barrel*. Although the *Cracker Barrel* court held that the plaintiff's demand for coverage was deficient, its deficiency was not that it failed to specifically request a sum of money. Rather, the demand was found deficient because it did not include a threat of bad faith litigation. *See id.* ("[T]he Court concludes that (1) a claim under § 56-7-105 must plead facts tending to show a formal demand was made, and (2) that a formal demand entails explicit threat of bad faith litigation."). Although the Sixth Circuit later rejected *Cracker Barrel*'s holding that an explicit threat of litigation is required to satisfy the formal demand prong, *see Heil Co. v. Evanston Ins. Co.,* 690 F.3d 722, 732 (6th Cir. 2012), the fact that i3 Verticals made an explicit threat of litigation

---

[7] i3 Verticals' correspondence with Starr is attached to i3 Verticals' Answer and Counterclaim and is thus appropriately considered in deciding Starr's Motion to Dismiss. *See Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007) ("[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss . . . without converting a motion to dismiss into one for summary judgment.").

[8] *Cracker Barrel* was decided by a different judge of this court and, of course, is not binding on other judges of the same court.

nonetheless supports its contention that its demand for coverage constitutes a formal demand. *See id.* ("Tennessee courts hold that the purpose of the "demand" requirement is to provide the insurer notice of the potential bad faith claim.") (citing *St. Paul Fire & Marine Ins. Co. v. Kirkpatrick*, 129 Tenn. 55, 164 S.W. 1186, 1190 (1913). i3 Verticals' demand for coverage and accompanying threat of bad faith litigation clearly provided Starr notice of its potential bad faith claim. Starr's argument that i3 Verticals failed to satisfy the formal demand requirement of § 56-7-105 is therefore unavailing. Starr also argues that i3 Verticals' demand is deficient because it does not specifically reference § 56-7-105, but this argument is foreclosed by *Heil*. In *Heil*, the Sixth Circuit found the formal demand requirement satisfied by a letter that included no reference to § 56-7-105. *Id.*

Starr also argues that the fourth prong cannot be satisfied because it did not engage in bad faith. Bad faith under § 56-7-105 is a factual determination for the jury. *Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 822 (Tenn. 2003) ("The language of this statute expressly applies to insurance companies and provides that a jury decide whether the evidence demonstrates bad faith on the part of the insurer."). i3 Verticals pleads that Starr engaged in bad faith by initially denying coverage, attaching unreasonable conditions to its subsequent decision to provide coverage, and refusing to contribute to settlement of the underlying lawsuit. Whether these actions constitute bad faith is a decision for the jury and is not properly addressed on a motion to dismiss.[9] Count II of i3 Verticals' Counterclaim will therefore not be dismissed at this time.

---

[9] Starr also seeks to dismiss i3 Verticals' claim for punitive damages, on the ground that it did not engage in bad faith. Because that determination cannot be made at this time, punitive damages remain available to i3 Verticals.

18

## **CONCLUSION**

For the foregoing reasons, i3 Verticals' Motion for Reconsideration, Starr's Motion for Judgment on the Pleadings, and Starr's Motion to Dismiss Counterclaim are all hereby **DENIED**. A separate order will issue.

ENTER this 7th day of August 2018.

                                              _____
                                              ALETA A. TRAUGER
                                              United States District Judge