UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 3:16-cv-2832 Judge Aleta A. Trauger |
| i3 VERTICALS, LLC ) ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court is a Motion for Leave to File Amended Complaint (Docket No. 103) filed by the plaintiff, Starr Indemnity and Liability Company ("Starr"), to which the defendant, i3 Verticals, LLC, aka Charge Payment, LLC ("i3 Verticals"), has filed a Response (Docket No. 107), and Starr has filed a Reply (Docket No. 109). For the reasons discussed herein, Starr's motion will be granted.

## BACKGROUND

Starr is an insurance company. i3 Verticals is an independent services operator that facilitates credit and debit card payments for merchants. On October 31, 2015, Starr and i3 Verticals entered into a Resolute Portfolio for Private Companies Policy ("Policy"), under which Starr issued insurance to i3 Verticals. The relevant insuring provision reads as follows:

> C. The **Insurer** shall pay on behalf of the **Company** the **Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable), against the **Company** for any **Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy.

(Docket No. 1-1 at 18 (emphasis in original).) The bolded terms are defined in the Policy. "Wrongful Act" is defined as, "with respect to [i3 Verticals], any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by [i3 Verticals]." (*Id*. at 22.)

On June 14, 2016, a class of merchants ("Underlying Claimants") filed suit in California state court against four companies, including Merchant Processing Solutions, LLC ("Payment Systems") and i3 Verticals. (Docket 1-2.) The Underlying Claimants' complaint ("Underlying Complaint") alleges that Payment Systems engaged in a host of improper practices related to merchant services for payments made via credit and debit cards. Payment Systems allegedly offered these services—including payment processing services, payment processing equipment leasing, monthly billing, collections, and attendant customer service—to small businesses. In its Complaint, Starr summarizes the allegations in the Underlying Complaint as follows:

> Payment Systems targets small "mom and pop" merchants with false promises of savings by reducing costs for merchant services if they switch providers and "induce 'mom and pop' merchants to purchase merchant services via every type of artifice and deception in the book, including but not limited to (a) failing to disclose fees they know the merchant will be charged; (b) affirmatively misrepresenting to merchants they will not be charged fees they know will be charged; (c) informing merchants that by signing they are only agreeing to 'apply' for services when in fact their signatures bind them to long-term, non-cancellable deals; (d) promising agreed-upon pricing information will be written on the contract documents after the merchant signs and then later including much higher pricing information; (e) forging merchant signatures and initials on contract documents; (f) burying unconscionable provisions that are never discussed with customers in the middle of fine print contract documents; and (g) attempting to ensure that the merchant does not read the contract document before signing.

(Docket No. 1 at 8 (quoting Docket No. 1-2 at 12).) i3 Verticals is implicated as an alleged successor-in-interest to Payment Systems. (*See, e.g.*, Docket No. 1-2 at 24).)

On August 23, 2016, i3 Verticals notified Starr of the Underlying Claimants' lawsuit and requested coverage from Starr pursuant to the Policy. On October 6, 2016, Starr advised i3

Verticals via letter that, pursuant to exclusions set forth in the Policy,[1] the Policy did not cover the Underlying Claimants' suit. Starr stated unequivocally its position on coverage:

> For the reasons set forth above, we regret to advise that coverage is unavailable under the Starr Policy for the allegations set for in the [Underlying Complaint] and Starr will not agree to defend or indemnify i3 Verticals in connection with this matter.

(Docket No. 71-1 at 4.) Starr also explicitly reserved its right to rely upon additional defenses or bases for its conclusion that the Policy did not provide coverage:

> The foregoing discussion should not be construed as the exclusive bases upon which Starr's coverage position are based and as such Starr reserves its right to supplement this coverage position. Starr continues to reserve all of its rights, remedies and defenses in connection with this matter . . . . No subsequent action, if any, that may be taken by Starr with respect to this matter should be construed as a waiver of any conclusion set forth in this letter, or any letters previously issued, or any rights, remedies or defenses otherwise available to Starr.

(*Id*. at 4–5.)

On October 18, 2016, i3 Verticals challenged Starr's decision and demanded coverage under the Policy. (Docket No. 71-2.) Starr subsequently reversed course and, in a November 3,

---

[1] The exclusions upon which Starr relied in denying coverage, excerpted in relevant part as follows, provide that:

> This policy shall not cover any **Loss** in connection with any **Claim**:
> . . .
> (e) based upon, arising from, or in consequence of any actual or alleged liability of any **Insured** under any express contract or agreement, except to the extent that such **Insured** would have been liable in the absence of such contract or agreement;
> . . .
> (s) alleging, arising out of, based upon or attributable to the rendering or failure to render any professional service to a customer or client of the **Insured**;

(Docket No. 1-2 at 22–25 (emphasis in original).) Starr also set forth additional defenses which are not relevant to this motion.

3

2016 letter, agreed to defend i3 Verticals against the lawsuit. (Docket No. 71-3.) Starr made the agreement pursuant to a full and complete reservation of rights and defenses. (*Id*. at 1.) Starr again specifically stated that there was no coverage available under the Policy: "It is Starr's position that the allegations of the [Underlying Complaint] do not trigger coverage under the [Policy]." (*Id*. at 2.) The letter also included the same language from Starr's initial denial letter, quoted above, regarding the reservation of additional defenses or bases for its coverage position. (*Id*. at 4.) That same day, Starr filed its Complaint in this court, seeking declaratory judgment that, due to the relevant exclusions, the Policy does not provide coverage to i3 Verticals for the Underlying Claimants' lawsuit and Starr is entitled to repayment of defense costs paid to i3 Verticals. (Docket No. 1.) Starr thereafter defended i3 Verticals in the underlying lawsuit. On September 29, 2017, i3 Verticals and the Underlying Claimants reached an agreement in principle on a class-wide settlement. i3 Verticals agreed to pay nearly one million dollars as part of the settlement. On May 21, 2018, Starr filed a Motion for Judgment on the Pleadings (Docket No. 81), requesting that the court enter judgment declaring that Starr owes no duty to defend or indemnify i3 Verticals based on the Policy's exclusions.

On August 7, 2018, the court denied Starr's Motion for Judgment on the Pleadings (Docket No. 100 at 14.) In doing so, the court addressed an argument raised by Starr for the first time in its reply brief: that coverage was never triggered under the Policy because the Underlying Complaint did not allege any Wrongful Act by i3 Verticals. Starr made the argument in response to i3 Verticals' position that the relevant Policy exclusions—upon which Starr relied in initially denying coverage—were not triggered because the Underlying Complaint contained only conclusory legal allegations against i3 Verticals, not factual allegations of wrongdoing. The court explained:

> By successfully establishing that the Underlying Complaint does not allege any breach, neglect, error, or act of its own doing, i3 Verticals has perhaps proven too much. By i3 Verticals' own telling, the Underlying Complaint does not allege any "Wrongful Act," as defined under the Policy, by i3 Verticals, but rather by Payment Systems. In its Sur-Reply, i3 Verticals contends that the Underlying Complaint does in fact allege a "Wrongful Act" by i3 Verticals, specifically "that i3 Verticals is liable as either the agent of or successor in interest to Payment Systems (which are both pled in conclusory fashion)." (Docket No. 99 at 7–8.) Even construing the Policy "liberally" in favor of i3 Verticals and "strictly" against Starr, *Elsner v. Walker*, 879 S.W.2d 852, 854–55 (M.D. Tenn. 1994) (citing *Alvis v. Mutual Benefit Health & Accident Ass'n*, 297 S.W.2d 643, 646 (Tenn. 1956)), this legal conclusion plainly falls outside the contours of the Policy's definition of "Wrongful Act," which is limited to acts or omissions committed by i3 Verticals.

(*Id*. at 13.) However, because Starr's Complaint did not seek declaratory relief that no "Wrongful Act" was alleged in the Underlying Complaint and that coverage was, therefore, never triggered, the court declined to further address the matter. On August 24, 2018, Starr moved to amend its Complaint. Starr seeks to assert additional allegations regarding the parties' coverage positions, and correspondence related thereto, and to add a new count, seeking declaratory judgment that the Underlying Complaint does not allege any Wrongful Act as required to trigger coverage under the Policy. (Docket No. 103-2.)

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 15(a) governs amending pleadings before trial. A party may amend a pleading once as a matter of course within (a) twenty-one days after serving it, or (b) if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). In all other cases, a party may only amend a pleading by obtaining the opposing party's written consent or receiving leave of the court. Fed. R. Civ. P. 15(a)(2). Where it is requested, "[t]he court should freely give leave when justice so requires." *Id*. "Furthermore, the thrust of Rule 15 is to reinforce the principle that cases should be tried on

5

their merits rather than the technicalities of pleadings." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982) (internal quotation marks omitted).

The district court has broad discretion to determine "when justice so requires." *Martin v. Assoc. Truck Lines, Inc*., 801 F.2d 246, 248 (6th Cir. 1986). A motion to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings. *Rose v. Hartford Underwriters Ins. Co*., 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dept. of Treasury, State of Mich., Revenue Div*., 987 F.2d 376, 382–83 (6th Cir. 1993)); *see also Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006) ("A Rule 12(c) motion for judgment on the pleadings for failure to state a claim upon which relief can be granted is nearly identical to that employed under a Rule 12(b)(6) motion to dismiss."). Stated differently, allowing an amendment that would subsequently be dismissed under a Rule 12(b)(6) motion or a Rule 12(c) motion for judgment on the pleadings does not serve the interests of justice.

## **ANALYSIS**

i3 Verticals makes three arguments against Starr's motion: that amendment would be futile because Starr is estopped from raising a new basis for denying coverage, that amendment is not warranted because of undue delay and prejudice, and that amendment would be futile because the

Underlying Complaint does allege a Wrongful Act against i3 Verticals. The court will address each argument in turn.

I. Estoppel

i3 Verticals first contends that Starr is estopped from asserting that no Wrongful Act was alleged because Starr did not reserve that argument. In Tennessee, insurers who wish to afford a defense to an insured pursuant to a reservation of rights must clearly advise the insured that it reserves the right to later deny or litigate coverage under the governing policy. *Richards Mfg. Co. v. Great Am. Ins. Co.*, 773 S.W.2d 916, 918 (Tenn. Ct. App. 1988). Moreover, "the reservation of rights or non-waiver notice given by the insurance company will be held sufficient only if it fairly informs the insured of the insurer's position." *Transamerica Ins. Grp. v. Beem*, 652 F.2d 663, 666 (6th Cir. 1981). Tennessee law thus demands a "high level of clarity in documents prepared by an insurer which purport to give notice to an insured of an insurer's reservation of rights." *Knox-Tenn Rental Co. v. Home Ins. Co.*, 2 F.3d 678, 683 (6th Cir. 1993). Applying these standards, i3 Verticals argues that Starr, by failing to reserve its right to claim that no Wrongful Act was alleged, did not fairly inform i3 Verticals of its coverage position.

Tennessee courts have rejected a requirement that insurers reserve individual bases for denials of coverage:

> We hold that it is not required that the reason given for the insurer's position be legally correct. The position taken may be correct, but for other legal reasons. It is the insurer's conclusion regarding the existence or non-existence of certain coverage that must be clearly and fairly communicated to the insured, not its legal reasons therefor.

*Richards Mfg. Co.*, 773 S.W.2d at 919. Whether a reservation of rights is sufficiently clear thus turns on whether the insurer provided adequate notice of its ultimate position regarding whether coverage exists. In both its initial coverage denial letter and its subsequent letter agreeing to defend

7

i3 Verticals pursuant to a full reservation of rights, Starr left no doubt as to its position that coverage was not available under the Policy. *See* (Docket No. 71-1 at 4 ("For the reasons set forth above, we regret to advise that coverage is unavailable under the Starr Policy for the allegations set for in the [Underlying Complaint]"); Docket No. 71-3 at 2 ("It is Starr's position that the allegations of the [Underlying Complaint] do not trigger coverage under the [Policy].").) Starr thus informed i3 Verticals of its coverage position in a sufficiently fair and clear manner.

The cases cited by i3 Verticals do not counsel otherwise. In *Richards Mfg. Co. v. Great Am. Ins. Co.*, the court held that the insurer's reservation of rights letter advising that there was no coverage for punitive damages was valid, even though the letter did not identify the correct bases upon which coverage was being denied. 773 S.W.2d at 919. The court also found that the insurer was liable for compensatory damages because its reservation of rights letter made no mention of them and because the insurer separately acknowledged liability for them. *Id*. Starr at no point acknowledged liability under the Policy. It clearly asserted its position that no coverage was available to i3 Verticals. In fact, Starr went even further. It explicitly reserved the right to later assert a different basis for its coverage position: "The foregoing discussion should not be construed as the exclusive bases upon which Starr's coverage position are based and as such Starr reserves its right to supplement this coverage position." (Docket No. 71-3 at 4.) Starr now seeks to do just that. The relevant holding from *Richards MFG. Co. v. Great Am. Ins. Co.* is that the insurer was not estopped from seeking punitive damages, despite providing its bases for its coverage decision in its reservation of rights. *Id*. Starr is likewise not barred from asserting a new justification for its prior position.

In *Transamerica Ins. Grp. v. Beem*, the court found an insurer estopped from relying on policy defenses. 652 F.2d at 666. The relevant issue was notice to the insured. *Id*. The insurer

8

gave its insured notice only that it was reserving its rights during an investigation of the accident underlying the claim. *Id*. Had the insurer invoked its policy defense following the investigation, there would have been no issue of estoppel, because the insured was on notice that investigative efforts did not constitute a waiver of rights by the insurer. But, the court explained, the company went beyond investigation. It retained an attorney who filed an answer on behalf of the insured, and it entered into serious negotiations with the injured party. *Id*. These steps, the court found, rendered the insurer's reservation of rights insufficient because it did not fairly inform the insured of the scope of the reservation. *Id*. The same cannot be said of Starr's reservation of rights. In agreeing to defend i3 Verticals, Starr fully reserved rights to litigate coverage issues in the future. (Docket No. 71-3 at 2.) And it specifically included language disclaiming additional actions or efforts as a waiver of its right to raise new defenses in the future: "No subsequent action, if any, that may be taken by Starr with respect to this matter should be construed as a waiver of any conclusion set forth in this letter, or any letters previously issued, or any rights, remedies or defenses otherwise available to Starr." (*Id*. at 4.) Unlike the insurer in *Transmerica Group v. Beem*, Starr fairly informed i3 Verticals of its position.

Finally, in *Knox-Tenn Rental Co. v. Home Ins. Co.*, the court held that an insurer was estopped from raising a policy defense against one of its insureds, Lowe. 2. F.3d at 680. Lowe was one of multiple defendants in a lawsuit, and the insurer provided notice of its reservation of rights to another defendant, the corporation that employed Lowe. *Id*. The court found that the reservation of rights was insufficient as to Lowe because he was never personally put on notice. *Id*. The reservation of rights letter was sent to the corporation, was not addressed to Lowe, and Lowe, an accountant, was not made privy to all correspondence between the insurer and the corporation. *Id*. This is plainly distinguishable from Starr's reservation of rights letter, reception

9

of which i3 Verticals does not contest. Because these cases do not support i3 Verticals' position that Starr insufficiently reserved its rights, Starr is not estopped from asserting its Wrongful Act defense.

## II. Undue Delay

i3 Verticals next argues that Starr's motion should be denied because Starr has waited nearly two years to amend its Complaint. However, delay alone is insufficient to justify denial of amendment. *See Tefft*, 689 F.2d at 640 n.2 ("Delay that is neither intended to harass nor causes any ascertainable prejudice is not a permissible reason, in and of itself[,] to disallow an amendment of a pleading."). The Sixth Circuit has set forth several considerations for determining what constitutes prejudice:

> In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction.

*Phelps v. McClellan*, 30 F.3d 658, 662–63 (6th Cir. 1994) (internal citations and quotation marks omitted). Starr counters that it was only put on notice of its defense approximately 80 days before filing its motion. However, the court need not determine the exact length of Starr's delay if no prejudice is found. *See Langley v. Credit Suisse First Boston Corp.*, 89 F. App'x 938, 944 (6th Cir. 2004) (allowing amendment despite two year delay where no prejudice found); *Tefft*, 689 F.2d at 640 (same, with four year delay); *Moore*, 790 F.2d at 562 (same, with nearly two year delay).

i3 Verticals contends that it has suffered prejudice in various forms. It asserts that it agreed to settle the underlying lawsuit for almost one million dollars based, in part, on its assessment of the merits of Starr's coverage position. i3 Verticals argues that, because it "believed it had a good chance of prevailing in this case because Starr was only making two exclusion-related arguments,"

10

it was therefore "more inclined to agree to settle the Underlying Lawsuit because it would eventually get the amounts back from Starr." (Docket No. 107 at 12.) But, as noted above, Starr expressly stated in its reservation of rights letter its exclusion-based arguments for denying coverage "should not be construed as the exclusive bases upon which Starr's coverage position are based and as such Starr reserves its right to supplement this coverage position." (Docket No. 71-3 at 4.) Starr consistently maintained, throughout its coverage dispute with i3 Verticals and the subsequent underlying litigation, that it did not owe coverage to i3 Verticals under the Policy. In entering the settlement agreement with the Underlying Claimants, i3 Verticals proceeded with full and fair notice that Starr disputed coverage and might later provide new arguments in support of its position. i3 Verticals assumed the risk that Starr could thereafter change its decisional bases for denying coverage. Therefore, if i3 Verticals was prejudiced by entering the settlement agreement, the prejudice was of its own making and cannot redound to the detriment of Starr.

i3 Verticals offers additional examples of prejudice. It contends that, had Starr stated in its coverage letters that it intended to later rely on a Wrongful Act defense, i3 Verticals could have focused more on that defense in its briefing against Starr's motion for judgment on the pleadings. This does not constitute prejudice because i3 Verticals has now had the opportunity—in response to this motion—to brief the issue in full. i3 Verticals also claims that it provided Starr with privileged and confidential materials, including its mediation brief from the underlying lawsuit. i3 Verticals contends that this constitutes prejudice because it would not have provided such materials, had Starr initially asserted a Wrongful Acts defense. But i3 Verticals does not explain how the provision of these materials prejudiced it. Starr does not rely on the materials in its briefings. The materials are not part of the record in this case. As far as the court can tell, Starr has derived no substantial benefit in this litigation from its possession of such materials.

Notable are the ways in which i3 Verticals does not contend it was prejudiced. No additional discovery would be required if Starr's motion were granted. Amendment would not significantly delay resolution of this dispute: the discovery deadline is not until March 1, 2019, and the trial is not set to begin until November 19, 2019. Allowing Starr to amend would not prevent i3 Verticals from bringing any action in another jurisdiction. Indeed, Starr's provision of costs and fees for independent defense counsel has allowed i3 Verticals to expeditiously proceed with the underlying litigation through the pendency of this matter. Even assuming that Starr's amendment constituted a significant delay, i3 Verticals has not suffered prejudice from it. Starr's motion will therefore not be denied due to delay.

III.  Wrongful Act

Finally, i3 Verticals contends that amendment would be futile because the Underlying Complaint alleges that it committed Wrongful Acts. As the court has previously indicated, in its view, the Underlying Complaint does not allege any act—wrongful or otherwise—committed by i3 Verticals. It alleges a variety of fraudulent acts committed by another company, Payment Systems, and asserts that i3 Verticals is legally liable for those acts as Payment Systems' successor-in-interest. In its Response, i3 Verticals argues that, "if successor liability is established Payment Systems and i3 Verticals are one in [sic] the same and the acts of Payment Systems are the acts of i3 Verticals." (Docket No. 107 at 15.) This misunderstands the nature of successor liability.

> Successor liability is an exception to the general rule that, when one corporate or other juridical person sells assets to another entity, the assets are transferred free and clear of all but valid liens and security interests. When successor liability is imposed, a creditor or plaintiff with a claim against the seller may assert that claim against and collect payment from the purchaser.

George W. Kuney, Successor Liability in Tennessee, Tenn. B.J., May 2007, at 24.  Successor liability is, by definition, the imposition of legal liability on an entity for the acts or omissions of another entity.  Establishing that i3 Verticals is liable for Payment Systems' acts does not change who committed those acts.  It establishes only liability, which is not a Wrongful Act as defined by the Policy.  Wrongful Acts are limited to, "with respect to [i3 Verticals], any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by [i3 Verticals]." (Id. at 22.)  i3 Verticals and Starr are sophisticated business entities.  They were free to negotiate a policy that covered Wrongful Acts of predecessors-in-interest but chose not to do so.  Because allegations of liability for the Wrongful Acts of other entities are not covered under the Policy, i3 Verticals fails to show that amendment would be futile on this basis.

## **CONCLUSION**

For the foregoing reasons, Starr's Motion to Amend is hereby **GRANTED**.  An appropriate order will enter.

ENTER this 23rd day of October 2018.

_____
ALETA A. TRAUGER
United States District Judge